IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

JENNIFER LYNN GLASS, :
:
    Plaintiff, :
:
vs. :
: CIVIL ACTION 13-0311-M
CAROLYN W. COLVIN, :
Social Security Commissioner, :
:
    Defendant. :

MEMORANDUM OPINION AND ORDER

In this action under 42 U.S.C. §§ 405(g) and 1383(c)(3), Plaintiff seeks judicial review of an adverse social security ruling which denied claims for disability insurance benefits and Supplemental Security Income (hereinafter *SSI*) (Docs. 1, 13). The parties filed written consent and this action has been referred to the undersigned Magistrate Judge to conduct all proceedings and order the entry of judgment in accordance with 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73 (*see* Doc. 22). Oral argument was waived in this action (Doc. 23). Upon consideration of the administrative record and the memoranda of the parties, it is **ORDERED** that the decision of the Commissioner be **AFFIRMED** and that this action be **DISMISSED**.

1

This Court is not free to reweigh the evidence or substitute its judgment for that of the Secretary of Health and Human Services, *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983), which must be supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The substantial evidence test requires "that the decision under review be supported by evidence sufficient to justify a reasoning mind in accepting it; it is more than a scintilla, but less than a preponderance." *Brady v. Heckler*, 724 F.2d 914, 918 (11th Cir. 1984), *quoting Jones v. Schweiker*, 551 F.Supp. 205 (D. Md. 1982).

At the time of the most recent administrative hearing, Plaintiff was thirty-seven years old, had completed an eighth-grade education though she did have training as a nursing assistant (Tr. 474-75), and had previous work experience as a fast food worker, a cook helper, and a companion (Tr. 484). In claiming benefits, Glass alleges disability due to degenerative disc disease and scoliosis of the lumbar spine, carpal tunnel syndrome, and asthma (Doc. 13 Fact Sheet).

The Plaintiff filed applications for disability benefits and SSI on October 23, 2008 (Tr. 166-69, 181-86; *see* Tr. 15). Benefits were denied following a hearing by an Administrative

Law Judge (hereinafter *ALJ*) (Tr. 32-42). On review, the Appeals Council vacated the ALJ's decision and remanded the action back for further consideration (Tr. 46-49). Following another hearing, the ALJ determined that although Glass could not perform her past relevant work, there were specific light work jobs that she could do (Tr. 15-26). Plaintiff requested review of the hearing decision (Tr. 10) by the Appeals Council, but it was denied (Tr. 4-6).

Plaintiff claims that the opinion of the ALJ is not supported by substantial evidence. Specifically, Glass alleges that: (1) The ALJ did not properly consider the conclusions of her treating physician; and (2) the ALJ did not properly evaluate her complaints of pain (Doc. 13). Defendant has responded to—and denies—these claims (Doc. 18). The relevant evidence of record follows.

On September 1, 2008, a lumbar spine series was performed, at McMillan Memorial Hospital, showing degenerative disk disease at L5-S1 with disk space narrowing (Tr. 284). There was very mild convex leftward upper lumbar scoliosis and minimal retrolisthesis of L2 on L3. Glass was advised to stop smoking (Tr. 285).

The next day, Plaintiff went to the Evergreen Medical

3

Center Emergency Room, complaining of lower back pain (Tr. 296-303).  Lumbar spine x-rays revealed very mild levorotoscoliosis of the lumbar spine; Glass was given a Toradol[1] injection and a prescription for Tylenol #3.[2]

A scoliosis survey, conducted on December 1, 2008, demonstrated very mild S-shaped scoliotic deformity of the thoracic and lumbar spine (Tr. 309).  A cervical spine series showed no definite fracture or foraminal stenosis (Tr. 310).

Glass was seen on December 22, 2008 by Dr. Stanley Barnes for complaints of back and neck pain (Tr. 401; *see generally* Tr. 389-405).  His examination showed some nonspecific pain to palpation on the neck; extremities demonstrated "evidence of generalized arthralgias, myalgias, aches and pain" in the lumbosacral region (Tr. 401).  The doctor prescribed Flexeril,[3] Ultram,[4] and Mobic.[5]  On January 21, 2009, with the same

---

[1] *Toradol* is prescribed for short term (five days or less) management of moderately severe acute pain that requires analgesia at the opioid level.  *Physician's Desk Reference* 2507-10 (52nd ed. 1998).

[2] **Error! Main Document Only.***Tylenol* with codeine is used "for the relief of mild to moderately severe pain."  *Physician's Desk Reference* 2061-62 (52nd ed. 1998).

[3] **Error! Main Document Only.***Flexeril* is used along with "rest and physical therapy for relief of muscle spasm associated with acute, painful musculoskeletal conditions."  *Physician's Desk Reference* 1455-57 (48th ed. 1994).

[4] **Error! Main Document Only.***Ultram* is an analgesic "indicated for the management of moderate to moderately severe pain."  *Physician's Desk Reference* 2218 (54th ed. 2000).

4

examination results, Barnes prescribed Soma[6] and Lortab[7] (Tr. 400). An MRI of the lumbar spine five days later revealed right eccentric disk bulge at L5-S1 with mild spinal and foraminal narrowing, greater on the right and minimal degenerative change at L4-L5 with no significant spinal or foraminal stenosis (Tr. 399). On February 18, 2009, Glass complained of lower back pain; his examination showed arthritis in the extremities for which he continued pain prescriptions and declared her disabled (Tr. 400). On March 18, Plaintiff complained of numbness and tingling in her hands; Barnes indicated that she may have carpal tunnel syndrome (Tr. 398).

On April 1, 2009, Dr. William B. Faircloth, with the Coastal Neurological Institute, examined Glass for complaints of pain in her lower back and both legs as well as numbness in both hands, radiating into her elbows (Tr. 417-21). On exam, the Neurologist noted pain with percussion of the Median nerve,

---

[5]**Error! Main Document Only.**Mobic is a nonsteroidal anti-inflammatory drug used for the relief of signs and symptoms of osteoarthritis and rheumatoid arthritis. *Physician's Desk Reference* 855-57 (62nd ed. 2008).

[6]**Error! Main Document Only.***Soma* is a muscle relaxer used "for the relief of discomfort associated with acute, painful musculoskeletal conditions," the effects of which last four-to-six hours. *Physician's Desk Reference* 2968 (52nd ed. 1998).

[7]**Error! Main Document Only.***Lortab* is a semisynthetic narcotic analgesic used for "the relief of moderate to moderately severe pain." *Physician's Desk Reference* 2926-27 (52nd ed. 1998).

bilaterally, in the extremities as well as with extension of the wrists bilaterally; there was limited flexion and extension in the lumbosacral spine. Straight leg raise was normal on both the left and right; toe and heel walking were both normal. Motor and sensory exams were both normal; deep tendon reflexes in the upper and lower extremities were normal bilaterally. Faircloth noted two problems: the first was carpal tunnel syndrome for which wrist splints were recommended; the second was mechanical instability for which surgical options were explained.

On April 20, 2009, Dr. Barnes noted perennial allergic rhinitis and nicotine addiction (Tr. 392). A month later, Glass complained of back pain; the doctor diagnosed osteoarthritis and musculoskeletal pain for which he prescribed Zanaflex[8] (*id.*). On June 22, Plaintiff complained of low back pain; a month later, Barnes noted arthralgias in the extremities (Tr. 391). In the next two monthly visits, the doctor talked with Glass about the possibility of back surgery and referred her to a consultant, but Plaintiff did not want to pursue it; Barnes continued back prescriptions (Tr. 390). In the October and November 2009

---

[8]**Error! Main Document Only.***Zanaflax* "is a short-acting drug for the acute and intermittent management of increased muscle tone associated with spasticity." *Physician's Desk Reference* 3204 (52nd ed. 1998).

examinations, Glass complained of back pain for which she received pain prescriptions (Tr. 389).

On November 19, 2009, Dr. Barnes completed a clinical assessment of pain in which he indicated that Glass suffered pain that would distract her from adequately performing her daily activities and that exercise would increase her pain so much that it would cause her to be distracted from—or totally abandon—her tasks; prescription medication side effects would be expected to be severe and limit her effectiveness due to distraction, inattention, or drowsiness (Tr. 407). Barnes also completed a physical capacities evaluation in which he indicated that Plaintiff was capable of sitting for two and standing or walking for two hours during an eight-hour workday; she would be able to lift and carry five pounds occasionally and one pound on a frequent basis (Tr. 408). The doctor further indicated that Glass would be capable of using arm and leg controls (for pushing and pulling movements), climbing, balancing, gross manipulation, fine manipulation, bending, stooping, and reaching only rarely. Plaintiff would miss more than four days of work a month because of her impairments.

On December 21, 2009, Dr. Barnes noted arthritis in Plaintiff's extremities and continued prescriptions for Lortab,

7

Flexeril, and Mobic (Tr. 415). On January 21, 2010, Plaintiff complained of neck pain with some radiation; her extremities showed evidence of generalized arthritis and pain in the lumbosacral region (*id.*). Over the next several months, the doctor's examinations next were, essentially, the same though a prescription for Phenergan[9] with codeine was added to the regimen; in the April 26, 2010 notes, Barnes stated that extremities and neurologic examinations were normal (Tr. 413-14). The doctor noted back and neck pain on May 26 (Tr. 412). On June 25, Glass complained of neck and pack pain; on examination, he noted low back and musculoskeletal pain and prescribed Flexeril and Lortab (Tr. 442). On July 27, Barnes noted diagnoses of musculoskeletal pain, low back pain, and osteoarthritis and prescribed Flexeril and Lortab (Tr. 441).

On August 18, 2010, Dr. Vijay C. Vyas performed a consultative examination of Glass; he stated that he had reviewed her medical records and MRI report (Tr. 423-33). On exam, he noted that Plaintiff's neck was supple, vaguely tender on the left, though there was no restriction of movement; Plaintiff told him that she did not have much neck pain. Dr. Vyas's musculoskeletal notes were as follows:

---

[9]**Error! Main Document Only.***Phenergan* is used as a light sedative. *Physician's Desk Reference* 3100-01 (52nd ed. 1998).

> Shoulders, elbows, wrists and fingers are
> normal and the grips are normal.  There is
> some tenderness on the right side of the
> lumbosacral area.  There is no tenderness in
> the lumbar spine.  The leg raising on the
> right side, she can raise to about 75
> degrees, on the left side she could raise to
> about 70 degrees and was having pain but the
> pain radiates to the right side when she
> lifts the left side.  The knees, ankles,
> calf and thigh are normal.  The peripheral
> pulses are normal.  Her gait is normal.  She
> tried walking on the toes and heels.  She is
> a little unsteady.  She does have a callus
> on the bottom of one of the feet and she
> could not walk very well.  She could not
> walk on the heel very well.  She can bend
> forward about 70 degrees, can bend backward
> about 5-10 degrees, sideways about 10-15
> degrees.  She could squat all the way with
> the help of a table and get up without any
> help and without any pain or restriction.

(Tr. 425).  "The cranial nerves, motor and sensory system is completely normal even though she complains of numbness once in a while" (*id*.).  Dr. Vyas's impression was as follows:  chronic lumbosacral pain with degenerative joint disease; mild obesity, on diet pills; previous history of drug abuse for many years; smoker; and history of asthma.  The doctor complete a range of motion (hereinafter *ROM*) chart in which he indicated that Glass had diminished ROM in the following areas:  lateral flexion bilaterally in the cervical spine; flexion, extension, and lateral flexion, bilaterally, in the dorsolumbar spine; and

9

flexion, extension, and internal rotation of the hips (Tr. 426-27). All other ROM measurements were normal in those areas as well as in the knees, ankles, shoulders, elbows, forearms, and wrists. Dr. Vyas also completed a physical capacities evaluation in which he indicated that Glass was capable of lifting and carrying up to twenty pounds frequently (Tr. 428-33). Plaintiff could sit three and stand and walk, each, for two hours at a time and could sit six and stand and walk, each, for four hours during an eight-hour day. The doctor indicated that Glass could reach, handle, finger, and feel with both hands continuously but could only push and pull on a frequent basis; she could use her right foot occasionally and her left foot frequently for pushing and pulling of foot controls. Plaintiff could climb stairs and ramps frequently, but climb ladders or scaffolds, balance, stoop, kneel, crouch, and crawl only occasionally. The doctor further noted that Glass could be exposed to moving mechanical parts and loud noise only frequently (as opposed to continuously); she could operate a motor vehicle frequently as well.

On August 27, 2010, Dr. Barnes noted Glass's complaints of back pain and stated that he was not really sure what to do; noting no particular examination results other than arthritis in

10

the extremities, he gave her a Toradol injection and continued her prescriptions (Tr. 441).  On September 29 and November 1, 2010, the doctor noted no pain complaints (Tr. 439-40).  On December 3, Plaintiff complained of back pain, stating that she could not get by without the medication; Lortab was prescribed (Tr. 439).  There were no complaints of pain in Dr. Barnes's examination notes of January 7, 2011, February 11, March 18, April 21, or May 20; he noted that she had had several injections and was receiving Lortab prescriptions during this period (Tr. 436-38).  On June 21, Glass had neck and back pain; extremities and neurological examinations were normal (Tr. 436).  On August 22, 2011, Dr. Barnes noted that Plaintiff complained of back, hip, and knee pain; he added Zanaflex to her Lortab prescription (Tr. 435).

At the most recent evidentiary hearing, Plaintiff testified that Dr. Barnes had given her shots in the back and prescribed Zanaflex and Lortab; she took three-to-four Lortab 10 mg a day, but they made her drowsy (Tr. 474-83).  She said that the injections did not work; she had had physical therapy following a car accident, but that did not help either.  Glass said that she had carpal tunnel in her wrists.  Plaintiff reported that she could walk fifteen minutes, sit for an hour, and lift a

11

gallon of milk. She drove short distances twice a week; Plaintiff could climb a set of stairs if there was a railing she could hold onto. She could not stoop or squat. Her left hand went numb daily. Glass could prepare a simple meal for herself; she needed someone to brush her hair for her and she liked to have someone close by in case she fell in the shower. Plaintiff could not make her bed, clean the bathroom, shop, take out the trash, iron, sweep, mop, or vacuum. Once a week, Glass could leave her home to visit friends or family and attend church. Generally, she sat at home and watched television and tried to knit.

This concludes the evidence to be reviewed.

Glass first claims that the ALJ did not properly consider the opinions and conclusions of her treating physician. She specifically references Dr. Barnes (Doc. 13, pp. 4-10). It should be noted that "although the opinion of an examining physician is generally entitled to more weight than the opinion of a non-examining physician, the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion." *Oldham v. Schweiker*, 660 F.2d 1078, 1084 (5th Cir.

1981);[10] see also 20 C.F.R. § 404.1527 (2013).

The ALJ, in her determination, held that she gave little weight to Barnes's conclusions

> because they are inconsistent with the
> longitudinal record and appear to be based
> primarily on the claimant's subjective
> allegations. His opinions are inconsistent
> with the claimant's failure to receive
> treatment from specialists in the fields of
> pulmonology, orthopedics, or pain
> management. They are also inconsistent with
> the claimant's daily living activities and
> the exam findings made by Dr. Faircloth and
> Dr. Barnes[11] including the claimant's normal
> gait, normal motor strength, normal
> sensation, and the fact that she is able to
> perform a full squat and rise without
> difficulty.

(Tr. 24).

The Court finds substantial support for the ALJ's determination in this matter. The MRI and x-rays of record demonstrate impairment, but only to a mild degree. The Court notes that while Dr. Faircloth noted Glass's complaints of pain, his own examination notes did not support the extreme limitations suggested by Dr. Barnes. The notes and conclusions

---

[10] The Eleventh Circuit, in the en banc decision Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

[11] The Court presumes that the ALJ meant to say that Barnes's conclusions were inconsistent with the exam findings of Dr. Vyas.

13

of Dr. Vyas stand totally at odds with Barnes's conclusions. Even Barnes's own treatment records exhibit multiple consecutive examinations wherein no mention of Plaintiff's pain is noted except as a continuing diagnosis; even when Plaintiff did complain of pain, there is nothing in the treatment notes to provide objective support for those complaints. The Court finds no merit in Glass's claim that the ALJ did not properly consider the conclusions of her treating physician.

Glass next claims that the ALJ did not properly evaluate her complaints of pain (Doc. 13, pp. 10-14). The standard by which the Plaintiff's complaints of pain are to be evaluated requires "(1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991) (citing *Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986)). The Eleventh Circuit Court of Appeals has also held that the determination of whether objective medical impairments could reasonably be expected to produce the pain was a factual question to be made by the Secretary and, therefore, "subject

only to limited review in the courts to ensure that the finding is supported by substantial evidence." *Hand v. Heckler*, 761 F.2d 1545, 1549 (11th Cir.), *vacated for rehearing en banc*, 774 F.2d 428 (1985), *reinstated sub nom. Hand v. Bowen*, 793 F.2d 275 (11th Cir. 1986). Furthermore, the Social Security regulations specifically state the following:

> statements about your pain or other symptoms will not alone establish that you are disabled; there must be medical signs and laboratory findings which show that you have a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all of the other evidence (including statements about the intensity and persistence of your pain or other symptoms which may reasonably be accepted as consistent with the medical signs and laboratory findings), would lead to a conclusion that you are disabled.

20 C.F.R. 404.1529(a) (2013).

In her determination, the ALJ found that although she suffered pain and limitations, they were not as severe as Glass alleged (Tr. 22). The ALJ noted that her daily living activities were inconsistent with her assertions of disability, pointing out the inconsistencies in records that she had completed as well as her testimony (Tr. 22). The ALJ noted that Glass received no particular—and certainly no specialized—treatment for her pain (Tr. 22). The ALJ noted that Dr. Faircloth's medical notes did not support the

15

degree of pain Plaintiff alleged; although the doctor did discuss with Glass the possibility of surgery, his records did not indicate any urgency for it, allowing her to decide when she could no longer bear the pain (Tr. 22-23). The ALJ noted that Dr. Vyas's records were totally unsupportive of Glass's pain allegations (Tr. 23). She also noted that although Plaintiff asserted medication side effects at her hearing, Glass had never made those complaints to her treating physician, Dr. Barnes (Tr. 23).

The Court finds substantial support for the ALJ's conclusions. The evidentiary record simply does not support her allegations.

Glass has raised two different claims in bringing this action. Both are without merit. Upon consideration of the entire record, the Court finds "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Perales*, 402 U.S. at 401. Therefore, it is **ORDERED** that the Secretary's decision be **AFFIRMED**, *see Fortenberry v. Harris*, 612 F.2d 947, 950 (5th Cir. 1980), and that this action be **DISMISSED**. Judgment will be entered by separate Order.

DONE this 11th day of February, 2014.

                                        s/BERT W. MILLING, JR.
                                        UNITED STATES MAGISTRATE JUDGE